UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON

EDRYCK DANTE MOONEY,       )
                          )
        Plaintiff,         )        No. 6:11-CV-00098-HRW
                          )
V.                         )
                          )        **MEMORANDUM OPINION
WARDEN ERIC D. WILSON, *et al.*,   )        AND ORDER**
                          )
        Defendants.        )

** ** ** ** **

Plaintiff Edryck Dante Mooney, confined in the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky, has filed a motion [D. E. No. 9], pursuant to Federal Rule of Civil Procedure 59(e) to alter, amend or reconsider the May 4, 2011, dismissal of his civil rights. For the reasons set forth below, the Court will deny Mooney's motion in part and grant it part, and allow his constitutional claims to proceed against three named defendants and the "John Doe" defendants.

## BACKGROUND

### 1. Complaint and Dismissal on Initial Screening

On March 29, 2011, Mooney filed the instant *pro se* Complaint, asserting constitutional claims against six officials/employees of USP-McCreary and other "Joe Doe" employees of USP-McCreary under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

Mooney alleged that in August 2010, three USP-McCreary mail-room specialists and the "Joe Doe Defendants" had, outside of his presence, opened and rummaged through a large delivery of documents that his attorney had mailed to him in an envelope clearly marked as "legal/ special mail." Mooney alleged that by the time he learned of the mail-opening event, prison officials had either destroyed or removed the envelope in which the material had been mailed.

Mooney claimed that when he complained to the Mail Room Supervisor and the Warden about the improper opening of his legal mail outside of his presence, they responded that the package had not been properly identified as "legal mail" according to Bureau of Prisons ("BOP") policy,[1] and that accordingly, the Mail Room staff was authorized to open the mailing and examine the contents.

Mooney argued that the opening of his "legal mail" outside of his presence violated his attorney-client privilege and his rights guaranteed under the First, Fifth, and Sixth Amendments of the United States Constitution. He sought compensatory and punitive damages against each defendant; injunctive relief preventing future violations of his constitutional rights and directing prison officials to comply with BOP policies

---

[1]

During the administrative exhaustion process, BOP officials at all levels informed Mooney that his attorney did not comply with BOP Program Statement ("PS") 5800.10, *Mail Management Manual*, and BOP PS 5261.11, *Correspondence*, which require attorneys to identify themselves as being qualified to claim special mail privileges, and to designate incoming legal mail to inmates by writing "Special Mail-Open Only in the Presence of the Inmate" on the outside of the mailing.

regarding incoming legal mail; and a declaratory judgment requiring prison officials to honor the inmates's attorney/client privilege.

The Court screened Mooney's Complaint under 28 U.S.C. § 1915 and 1915A, on May 4, 2011, entered a Memorandum Opinion and Order ("the Opinion and Order") and Judgment dismissing all of Mooney's claims [D. E. Nos. 6 & 7]. The Court dismissed Mooney's First Amendment claims based on *Lewis v. Casey*, 518 U.S. 343, 346, (1996), and other circuit court decisions which hold that in order to state a First Amendment claim of interference with mail, a plaintiff must show actual injury as a result of the alleged interference. *Lewis* defines this as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 346]. The Court concluded that even assuming that the USP-McCreary mail room employees had opened Mooney's legal mail, Mooney not alleged that he was involved in any pending litigation, or that the defendants had caused any case of his court cases to be dismissed, prevented him from filing a case, or prevented him from meeting a court-imposed deadline. Lacking those allegations, the Court determined that Mooney had alleged no actual prejudice or actual injury based on the complained-of conduct. Further, the Court noted that Mooney had alleged only one incident of interference with his legal mail in August 2010, and that an isolated act of opening a prisoner's legal mail is usually insufficient to establish a First Amendment violation.

3

Next, the Court dismissed Mooney's claim that the alleged interference with his legal mail violated his Sixth Amendment right to counsel. The Court concluded that the Sixth Amendment applies only to criminal proceedings.

Finally, the Court dismissed the claims against supervisory Defendants Wilson (Warden and head Administrator), Ormond (Associate Warden), and Mattingly (Inmate Systems Supervisor) because Mooney had not alleged that these defendants either had been personally involved in opening his legal mail outside of his presence, or that they had encouraged subordinates to open his legal mail outside of his presence.   The Court determined that those claims were based solely on the doctrine of *respondeat superior*, which is insufficient to establish supervisory liability in a *Bivens* action.

### 2. Mooney's Rule 59(e) Motion to Alter or Amend

Mooney asserts six challenges to the Opinion and Order.  Summarized, Mooney argues that:  (1) the Court improperly assessed him with the $350.00 filing fee; (2) the Court screened his claims twice and determined in the first instance that his claims were meritorious but determined in the second instance that they were not meritorious; (3) the Court improperly characterized his claim alleging interference with his legal mail as a First Amendment "access to the courts" claim instead of a Fifth Amendment due process claim; (4) USP-McCreary mail room staff has opened his legal mail only one time; (5) two Sixth Circuit decisions preclude a district court from *sua sponte* dismissing, at the

initial screening stage, a claim alleging interference with an inmate's legal mail; and (6) the Court improperly determined that his claim that prison staff allegedly opened his legal mail outside of his presence stated no Sixth Amendment violation.

## DISCUSSION

Mooney's objection to being assessed the $350.00 filing fee lacks merit. He complains that the process of assessing an inmate with a $350.00 filing fee, and then dismissing their claims "force[s] poor inmates to be saddled with the burden of a $350.00 debt, but still deny them their day in court."

Mooney is mistaken if he contends that the *in forma pauperis* provisions of 28 U.S.C. § 1915(b) permits a prisoner to avoid any financial responsibility, even if a district court *sua sponte* dismisses his Complaint at the initial screening stage.

By passage of 28 U.S.C. § 1915(e), Congress imposed on inmates the obligation to pay the $350.00 filing fee in a civil case regardless of whether they are successful or unsuccessful at any given stage in civil cases that they file. Section 1915(b)(1) mandates the assessment of both the $350.00 filing fee and an initial partial filing fee in all prisoner cases, but § 1915(b)(2) permits prisoners to pay the remainder of filing fee in installments via periodic remittances from their inmate trust account when they meet certain financial conditions. The filing fee assessment is mandatory, not optional or contingent on whether the prisoner's civil rights complaint survives initial screening

5

under §§ 1915(e) or 1915A.[2]  If the prisoner has no funds in his inmate account, the jail

or prison transmits no monies to the district court, but federal courts process the

Complaint regardless of whether an inmate pays the filing fee in full, pays it in

installments, or has no available funds in his inmate account from which installment

payments can be made.

Mooney next alleges that in the April 28, 2011, Order granting him pauper status,

the Court initially screened his Complaint under 28 U.S.C. § 1915(e)(2)(B) and

determined that his claims were not frivolous, malicious, or lacking in merit yet reached

a contradictory result six days later, when it screened his Complaint, for a second time,

under 28 U.S.C. § 1915A(a), in the Opinion and Order.

This allegation is patently incorrect.  The Court did not conduct **any** type of initial

screening when it entered the April 28, 2011, Order granting him pauper status, [D. E.

No. 5].  In that Order, the Court merely determined that Mooney qualified for pauper

status under 28 U.S.C. § 1915**(b)**, not § 1915**(e)**, the latter being the subsection listing

---

[2]

28 U.S.C. § 1915(b)(1) states in relevant part:  "**Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee**.  The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee. . . ." (Emphasis added).

6

the criteria for screening prisoner complaints.  In fact, § 1915(e) is mentioned nowhere in the Order granting Mooney pauper status.

Next, Mooney claims that the defendants allegedly opened his legal mail outside of his presence on more than one occasion.  However, in his Complaint, Mooney described only **one** specific event of alleged mail-opening, which he alleges occurred sometime prior to August 17, 2010.  He did **not** allege that the defendants had opened his legal mail outside of his presence on any prior occasion.  Mooney completely changed his allegation on the issue only after the Court explained in the Opinion and Order that an isolated event of opening a prisoner's legal mail outside of his presence does not constitute a constitutional violation.  The Court remains guided by Mooney's allegations in the Complaint, not a revised version based on the hindsight of the Opinion and Order.

Next, Mooney argues that the Court improperly characterized his claim as an "access to the courts" claim under the First Amendment and improperly applied "unfavorable case law to the claim, i.e., Lewis v. Casey, 518 U.S. 343 (1996). . . ."  He claims that he never mentioned the phrase "'access to the courts,' mush less plead such a First Amendment violation as the basis for *Bivens* action relief," and further contends that he alleged that the opening of his legal mail violated only his "attorney-client" privilege, not that it denied him access to the courts.   He contends that applying *Lewis*

7

to his claim "violates Sixth Circuit legal-mail jurisprudence, which is to avoid an unjustified chilling of prisoner's [sic] First and Sixth Amendment rights, and the attorney-client relationship."

The Complaint itself refutes Mooney's claim on this issue. In every paragraph of the section of the Complaint entitled "Allegations for Relief," Mooney specifically alleged that the defendants had violated his "**First**, Fifth and Sixth Amendment rights to attorney client privileges . . . ." [D. E. No. 2, pp. 6-7, ¶¶ (1)-(5)] (emphasis added). Furthermore, a prisoner's right to receive mail is protected by the First Amendment. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401,(1989) ("[t]he interests of prisoners and their correspondents in uncensored communications by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest...."); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992); *Parrish v. Johnson*, 800 F.2d 600, 603 (6th Cir. 1986).

In contrast, the Sixth Amendment protects the attorney-client relationship from unwarranted intrusion in *criminal* settings. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). Based on the allegations of Mooney's Complaint and applicable First Amendment case law, the Court logically construed an "access to the courts" claim under the First Amendment and applied the factors set forth in *Lewis*.

8

Next, Mooney incorrectly argues that the Court improperly dismissed his various *Bivens* claims against Defendants Wilson, Ormond, and Mattingly. In his Rule 59(e) motion, Mooney now alleges that Wilson, Ormond, and Mattingly

> ... knew about the alleged constitutional violations that the mail-staff were allegedly committing and allowed it to occur for failing to act and acquiescence in such after being put on notice of constitutional violations, and thereby implicitly authorizing such conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

[D. E. No. 9, p. 7].

As discussed in the Opinion and Order, Mooney did not allege *in his Complaint* that Wilson, Ormond, and Mattingly were personally involved in the alleged opening of his legal mail outside of his presence on or before August 17, 2010, or that they had prior knowledge about such conduct and failed to prevent it. Mooney only alleged that on August 17, 2010, he learned that the mail room staff had opened one piece of his legal mail, and that a week later, he approached both Defendants Ormond and Wilson on separate occasions in order to obtain more information about his mishandled legal parcel. The key to those allegations are Mooney's assertions: (1) that he notified Ormond and Wilson about the opening of his legal mail a week *after* it happened on or before August 17, 2010, and more importantly, (2) that he discussed "**Plaintiff's** mishandled legal parcel" with Ormond, *id.*, p. 5, ¶ 7, and "**his** mishandled legal parcel" with Wilson. [Emphasis added].

9

Thus, Mooney complained only about one legal mail opening event (his own) after it happened on or before August 17, 2010. Mooney did not allege that *prior* to the opening if his legal mail on August 17, 2010, he inquired about, or warned these three defendants of alleged prior improper legal mail-opening procedures affecting his legal mail. Further Mooney alleged neither that he, or anyone else, notified these three defendants that the mail room staff was improperly opening *other inmates'* legal mail, nor that in response to prior notice, these three defendants failed to act or correct the alleged mail room practices.

Such allegations would have stated a claim of personal liability under *Bivens* sufficient to require the defendants to respond to the Complaint. A plaintiff must prove that supervisory defendants did more than play a passive role in the alleged constitutional violations or show mere tacit approval of the complained-of activity, and must show that the supervisors somehow encouraged or condoned the actions of their inferiors. *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).

At a minimum, a plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995). In order to allege that supervisory defendants acquiesced to or approved of certain conduct, the plaintiff must allege that the supervisory defendants knew about the

alleged offending conduct and did nothing.

Mooney did not allege in his Complaint that prior to August 17, 2010, Defendants Wilson, Ormond, and Mattingly *knew* that there was any problem with the prison mail-room staff opening inmates' legal mail. Only with the benefit of hindsight from the Opinion and Order has Mooney altered and enhanced his allegations about these defendants' alleged prior knowledge and involvement to conform to the case law.

Further, where the defendants' only roles involves the failure to act, they cannot be liable under § 1983 [the state law corollary to Bivens]. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Liability must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Id.* at 300, (citing *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998)).

Therefore, based on the facts alleged in his Complaint, the Court justifiably concluded that Mooney's claims against these three defendants were based solely on the doctrine of *respondeat superior*, which can not form the basis of supervisory liability in a *Bivens* action. Once again, the Court will again be guided by the allegations set forth in the Complaint, which did not include an allegation that prior to the events of August 17, 2010, Wilson, Ormond, and Mattingly knew about the alleged opening of prisoner's legal mail outside of their presence. The Court will not set aside the part of the Opinion and Order dismissing the claims against Defendants Wilson, Ormond, and Mattingly.

11

Next, Mooney claims that the Opinion and Order failed to address his claims under the Fifth Amendment.  Mooney failed to explain how his claims fell under the Fifth Amendment, which (1) prohibits government actors from taking property, and (2) guarantees due process of a law.  As for a possible "taking" claim, Mooney did not allege that he was deprived of the contents of his legal mail, or that the defendants permanently seized and confiscated the contents.   Mooney claims only that the mailing packaging/envelope was destroyed, and that the mail room defendants opened the content of this mailing outside of his presence.

As for a possible procedural due process claim, Mooney did not identify what "process" he was denied as a result of the alleged improper opening of his legal mail. He certainly identified no litigation in which he was adversely affected or prejudiced because of the alleged improper opening of his legal mail. Mooney filed grievances complaining about the opening of his legal mail, so he clearly availed himself of the administrative remedy procedure.  Given the vagueness of Mooney's Fifth Amendment claim, the Court concluded that it might have stemmed from the denial of his administrative remedies.   On the last page of the Opinion and Order, the Court specifically dismissed any Fifth Amendment claim based on the rejection of Mooney's administrative remedies.   Despite the deficiencies of this claim, the Court will, for the reasons set forth *infra*, partially set aside the Opinion and Order and require the three

USP-McCreary mail room employees to respond to Mooney's "Fifth Amendment" claims.

Mooney next argues that the Court incorrectly determined that he failed to allege a valid Sixth Amendment "denial of counsel" violation. As explained in the Opinion and Order, to state a Sixth Amendment claim for deprivation of right to counsel through interference with legal mail, the plaintiff must allege that the interference created a barrier to his relationship with his counsel. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

In his Complaint, Mooney simply stated that he had requested his ". . .complete criminal case file from defense attorney Paul Bruno. . . ." [D. E. No. 2, p. 4]. He then stated that he later discovered that parcel packaging was missing, and that "the parcel was from attorney Bruno and property [sic] marked." However, Mooney did not allege that the missing parcel package pertained to a criminal or a civil case; that the opening of his legal mail created a barrier between him and his attorney; or that he suffered any adverse consequence in any legal proceeding as a result of the opening of his legal mail. *See Truss-El v. Bouchard*, 103 F. App'x 575, 577 (6th Cir. 2004) ("In addition, Truss-El had no claim based upon the alleged interference with his legal mail because he did not demonstrate any prejudice to pending or contemplated litigation." (Citation omitted).

Mooney alleges, for the first time in his Rule 59(e) motion, that his opened legal

13

mail consisted of documents which his attorney had mailed to him "...to pursue <u>criminal</u>

<u>post-conviction relief</u>." [D. E. No. 9, p. 6] (emphasis in original).

According to the Public Electronic Access to Public Records ("PACER") website,

http://www.pacer.gov/,[3] Mooney was not involved in a criminal proceeding in August

2010.  According to a PACER search, the last Order in Mooney's federal criminal case,

in the United States District Court for the Middle District of Tennessee, was entered on

November 14, 2007, and denied Mooney's motion for a sentence modification under 18

U.S.C. § 3582(c).[4]  On November 26, 2007, Mooney filed a letter noting his new address

at USP-McCreary,[5] but no other activity has ensued in his criminal case since November

26, 2007.

Mooney did file a motion to vacate his sentence under 28 U.S.C. § 2255  in the

Middle District of Tennessee, but not until February 22, 2011, six months after the event

alleged in his Complaint.[6]  Notably, Mooney filed the § 2255 motion proceeding *pro se*;

he is not represented by counsel.

---

[3]

PACER compiles information about criminal and civil actions filed in all federal courts.

[4]

See November 14, 2007, Order entered in *United States v. Mooney*, No. 3:02-cr-00074-1 (M.D. Tenn.) [R. 246].

[5]

*See id.*, [D. E. No. 247].

[6]

*See* 28 U.S.C. § 2255 Motion to Vacate Set Aside or Correct Sentence, filed on February 22, 2011, in *Mooney v United States*, No. 3:11-CV-00164 (M.D. Tenn.).

14

Mooney points to *Merriweather v. Zamora*, 569 F.3d 307 (6ᵗʰ Cir. 2009), in which

the Sixth Circuit held that the district court properly denied the defendants' motion for

summary judgment regarding a prisoner's claim that prison officials improperly opened

his legal mail outside of his presence. *Id.*, at 313.  Mooney also relies on *Sallier v.*

*Brooks*, 343 F.3d 868, 877 (6th Cir. 2003), in which the court stated that "'legal mail'

cannot be opened outside the presence of [the inmate],"[7] and *Baker v. Mukasey*, 287 F.

App'x 422, 425 (6ᵗʰ Cir. 2008), wherein the same court concluded that a prisoner

alleging that BOP officials had read his constitutionally protected legal mail outside of

his presence had stated an actionable claim that should have survived initial screening

under 28 U.S.C. § 1915.

On one hand, some Sixth Circuit cases require an inmate to specifically allege that

the prison staff's interference with his legal mail has adversely affected his First

Amendment right of access to the court, *see Stanley v. Vining*, 602 F.3d at 770; *Corsetti*

*v. McGinnis*, 24 F. App'x. 238, 241 (6th Cir. 2001); and *Pilgrim v. Littlefield*, 92 F.3d

---

[7]

This Court has previously noted, however, that this isolated sentence indicates only the
recognition of the basic right of prisoners to receive mail.  Both the Supreme Court and the Sixth
Circuit have long recognized that this right is subject to reasonable regulation to meet a prison's
security needs. *Wolff v. McDonnell*, 418 U.S. 539, 576-77(1974) (inmates' right to have legal mail
opened only in their presence is subject to reasonable prison regulations); *Knop v. Johnson*, 977 F.2d
996, 1012 (6th Cir.1992) (prison officials may impose restrictions that are reasonably related to
security or other legitimate penological objectives); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir.
1993) ("prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied
policy with an eye to maintaining prison security.")

413, 416 (6th Cir. 1996). On the other hand, *Merriweather*, *Sallier*, and *Baker* appear to require the USP-McCreary mail-room employees to respond to Mooney's claims that their opening of his legal mail violated his First and/or Fifth, and Sixth, Amendment constitutional rights.

In this case, the BOP has acknowledged that USP-McCreary mail room officials opened a piece of mail addressed to Mooney, but justified the action on the grounds that the mailing had not been properly identified as "Special/Legal Mail" in accordance with BOP regulations.     Mooney claims that prison officials destroyed the mailing envelope/outside packaging material. The envelope would have conclusively determined if the mailing had in fact been properly identified.

In order to develop the record regarding Mooney's allegation that USP-McCreary mail staff opened the mailing from Attorney Bruno to Mooney, the Court will partially set aside the Opinion and Order and require defendants  "J." Cornelius, Mail Room Specialist; "K." Johnson, Mail Room Specialist; and "S." Saylor, Mail Room Specialist, to respond to Mooney's First, Fifth and Sixth Amendment claims set forth in the Complaint. Mooney will also be required to identify the "John Doe Defendants" within 120 days of the date of entry of this Order. The dismissal of the claims against Wilson, Ormond, and Mattingly remains unaffected by this Memorandum Opinion and Order.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)      Plaintiff Edryck Dante Mooney's motion [D. E. 9] to alter, amend, or reconsider the Memorandum Opinion an Order and Judgment of May 4, 2011 [D. E. Nos. 6 & 7] is **SUSTAINED IN PART** and **OVERRULED IN PART** as follows:

(a)      Mooney's motion to alter, amend, or reconsider the  dismissal  of his *Bivens* claims against Defendants Eric Wilson, "R." Ormond, and Sheila R. Mattingly, is **OVERRULED**; the dismissal of the claims against those defendants will not be set aside, altered, or amended; and

(b)      Mooney's motion to alter, amend, or reconsider the dismissal of his *Bivens* claims against USP-McCreary Mail Room Specialists "J." Cornelius, "K." Johnson, and "S." Saylor, and "Unknown John Doe Defendants," is **SUSTAINED**, and the Clerk of the Court is directed to **REOPEN** this proceeding;

(2)     The Clerk of the Court is directed to issue summonses  for:  (1) "J." Cornelius, USP-McCreary Mail Room Specialist; (2) "K." Johnson, USP-McCreary Mail Room Specialist, and (3) "S." Saylor, USP-McCreary Mail Room Specialist.

(3).     For each of the Defendants specified above, the Clerk shall prepare the necessary number of "Service Packets" consisting of the following documents:

a.      Completed summons forms;

17

      b.        Complaint [D. E. No. 2];

      c.        The May 4, 2011, Memorandum Opinion and Order [D. E. No. 6];

      d.        Mooney's Rule 59(e) Motion [D. E. No. 9];

      e.        This Memorandum Opinion and  Order;

      f.        Completed United States Marshals Service ("USMS") Forms 285 for each defendant to be served.

If the Clerk is unable to accurately complete any of the documents described above, the Clerk shall set forth the reason in a docket entry.

(3).    For each defendant to be served, the Clerk shall prepare three (3) Service Packets to be provided to USMS in Lexington, Kentucky, addressed as follows:

      (a)    to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

      (b)    to the Office of the Attorney General of the United States in Washington, D.C.; and

      (c)    for personal service at the BOP Central office in Washington, D.C.

(4).    The London Clerk shall send by certified mail the required Service Packets for each of the defendants to USMS in Lexington, Kentucky.  The Clerk shall enter the certified mail receipt into the record and note in the docket the date that the Service

Packet was delivered to the USMS.

(5).    The USMS shall serve each of the identified defendants by:

(a)    Sending a Service Packet for each identified defendant by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

(b)    Sending a Service Packet for each identified defendant by certified or registered mail to the Office of the Attorney General of the United States in Washington, D.C.; and

(c)    Personally serving a Service Packet upon the named defendants through arrangement with the Federal Bureau of Prisons.

The USMS is responsible for ensuring that each defendant is successfully served with process.  In the event that an attempt at service upon a defendant is unsuccessful, the USMS shall make further attempts and ascertain such information necessary to ensure successful service.

(6).    Within 40 days of the date of entry of this Order, the USMS shall send a Service Report to the London Clerk's Office, which the Deputy Clerk shall file in the record, stating whether service has been accomplished with respect to each identified defendant.

a.    For each defendant to be served by certified mail, the Service Report

shall include:

           1.     a copy of the green card showing proof of service; or

           2.     a statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

           b.     For each defendant to be personally served, the Service Report shall indicate:

           1.     that the defendant was successfully served personally and when, or

           2.     a statement explaining what efforts are being taken to locate the defendant and accomplish personal service.

(7)     Pursuant to federal Rule of Civil Procedure 4(m), Mooney's failure to identify the "Unknown John Doe Defendants," and have them served within 120 days after the date of this Order, will result dismissal of the claims asserted against them.

(8).     Mooney must advise the London Clerk's Office of any change in his current mailing address.  Failure to do so may result in dismissal of this case.

(9).     Mooney must communicate with the Court solely through notices or motions filed with the London Clerk's Office.  The Court will disregard correspondence sent directly to the Judge's chambers.

(10).    For every further pleading or other document he wishes to submit to the

Court, Mooney shall serve upon each defendant, or, if appearance has been entered by

counsel, upon each attorney, a copy of the pleading or other document.  Mooney  shall

send the original papers to be filed with the Clerk of the Court together with a certificate

stating the date a true and correct copy of the document was mailed to each defendant

or counsel.  **If a District Judge or Magistrate Judge receives any document which**

**has not been filed with the Clerk, or which has been filed but fails to include the**

**certificate of service of copies, the Court will disregard the document**.

This *14th* day of *September*, 2011.



Signed By:
Henry R. Wilhoit, Jr.
United States District Judge

21